[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a claim by the plaintiff, Syde Taheri, for past due rent against the defendant, John C. Maxwell, III. The plaintiff alleges in his amended complaint of March 9, 1992, that he, as landlord, and the defendant, as tenant, entered into a written lease dated October 29, 1989, relating to apartment 34-E at 630 First Avenue, known as Manhattan Place, in New York City, for two years commencing December 1, 1989, at an annual rent of $28,800 for the first year and $30,528 for the second year. The plaintiff further contends that the defendant vacated the premises on August 5, 1990, and that the defendant owes him $40,128 of rent for the unexpired term of the lease. Mr. Taheri also seeks an additional $5,000 for brokerage fees, painting and repairs.
The defendant filed an answer generally denying the complaint, and adding special defenses that the plaintiff failed to "mitigate" his damages; that he should be "estopped" from collecting any unpaid rent because he had led the defendant to believe that the premises could be vacated without any liability on the part of the defendant; and that enforcement of the damages claimed would be "inequitable" because they were in excess of actual damages.
The case was referred to Attorney Cary L. Fleisher, an attorney trial referee, in accordance with General Statutes (52-434(a) and Practice Book 428 et seq. A hearing was held on April CT Page 1184 23, 1992, at which five witnesses, including the plaintiff and the defendant, testified. Thereafter the attorney trial referee filed his report including a number of findings of fact, among which were that: (1) the defendant vacated the subject premises at the end of July, 1990, although the lease did not expire until November 30, 1991; (2) the premises were listed for rent in early August, 1990 with several brokers, but remained vacant until June, 1991 at which time the apartment was rented for $2,100 per month for the first year, and $2,226 per month for the second year, as contrasted with $2,400 and $2,544 under the lease with the defendant; and (3) the plaintiff retained a $3,600 security deposit received from the defendant.
The attorney trial referee drew the following conclusions from these facts: (1) the defendant breached the lease; (2) the plaintiff made reasonable efforts to mitigate damages by rerenting the premises; (3) the defendant was entitled to a credit for the security deposit in the amount of $3,600; (4) other damages claimed by the plaintiff for repairs, brokerage commission and moving-in charges were attributable to normal wear and tear, and were not compensable; (5) the defendant knew that he had vacated the premises before the lease expired, and therefore was not entitled to receive the certified notice of a default referred to in the lease; and (6) plaintiff was entitled to recover $36,528 for unpaid rent.
In accordance with Practice Book 438, the defendant moved to correct the attorney trial referee's report. He claimed that the findings of fact should be amended in a number of ways, including that: (1) the plaintiff never introduced into evidence the original lease, or made a satisfactory explanation of the location of the original lease, nor did the plaintiff prove that the lease bore the signature of the defendant; (2) the plaintiff's failed to make reasonable efforts to rerent the subject premises because the apartment was first listed for rent at $2,600 per month, whereas the evidence indicated the market for the subject premises at the time was between $2,000 and $2,500 per month; (3) defendant had advised plaintiff that he would be leaving the premises in July, 1990, and that plaintiff's son and agent "gave him permission to move"; and (4) the lease provided that all notices, including that of a default under the lease for failure to pay rent, should be sent certified or registered mail, but that the plaintiff failed to sent such notice. CT Page 1185
The referee did not change his ultimate conclusions that the defendant tenant owed back rent to the plaintiff, and also that the plaintiff had made reasonable efforts to rerent the premises. However, the referee made the following changes to his report in accordance with the defendant's motion to correct: (1) after the defendant moved out, the apartment was originally listed for rent at $2,600 per month, not $2,400; that the fair rental range was between $2,000 and $2,500 per month; and the rental market was falling in New York City at the time the defendant vacated; (2) defendant notified plaintiff in early June 1990, that he was planning on vacating the premises, and plaintiff did not reply in writing until early September 1990, to protest the breaking of the lease; (3) plaintiff did not lower the asking price to $2,100 until December 1990; and (4) the lease required written and certified notice of a default, including nonpayment of rent, but no such notice had been sent to the defendant.
Pursuant to Practice Book 439, the defendant then filed exceptions to the report asking this court to correct the report, and properly filed the required transcript. The exceptions contended that the attorney trial referee erred in failing to make the other corrections set forth in his motion to correct. Practice Book 440.
The requested corrections may be summarized as follows: (1) the plaintiff did not know whether the copy of the lease offered in evidence was a copy of the original lease, and the copy should not have been admitted into evidence because of the lack of a proper foundation as to the location of the original; (2) the plaintiff's son and agent, Paul, did not do anything directly to re-rent the subject premises; (3) the number of offers by potential lessees will be decreased if the requested rent is too high, and that because of a downturn in the real estate market at the time in question, the plaintiff should not have asked for a rental in the same amount as that paid by the defendant; (4) the apartment was only advertised for rent once every three weeks on Sundays; (5) the on-premises rental agent showed the unit to prospective tenants sixteen times between August 1990 and June 1991; (6) the on-premises rental agent testified that the plaintiff's son and agent wanted the locks changed after the defendant vacated so that he could not return; and (7) the September 5, 1990 letter from plaintiffs attorney was the first "unequivocal" notice to the defendant that he would be responsible for unpaid rent. CT Page 1186
The transcript in this case had been reviewed and it is clear that there is ample support for the referee's factual findings. Among his key findings was that a copy of the purported original lease could be admitted into evidence. The defendant admitted that the exhibit contained his signature, and the plaintiff identified his own signature as well. The plaintiff testified that he looked for the original lease and could not find it, and in response to a question of whether it was his best recollection that the exhibit was "a copy of the lease that (he) signed," he responded "[y]es, it is." The plaintiff's son testified that the copy was "exactly" the same as the original lease. Moreover, the defendant conceded that he moved into the plaintiff's apartment and paid the rent called for in the exhibit. I believe that the referee was justified under the circumstances in admitting a copy of the original lease into evidence.
The defendant claims that he and his wife received permission from the plaintiff's son, Paul, to vacate the premises without further liability. However, Paul testified that in a telephone conversation with Mrs. Maxwell she asked whether they could "get off the lease," to which he replied "no," although he indicated that he would make every effort to find a suitable replacement. This same witness also testified at another point that "I told (the Maxwells) if they moved out they would be responsible for the lease." Paul Taheri testified that he instructed his father's lawyer in New York City to advise the Maxwells even before they moved out that they would be financially responsible if they breached the lease.
With respect to attempting to rent the premises for $2,600 per month after the defendant vacated the premises, Paul Taheri testified that he advised all of the four or five brokers and the in-house broker that his father would take less and was ready to negotiate with any prospective tenant for a lower rent. Paul also testified that he did in fact instruct one broker in December 1990, to lower the proposed rent to $2,100. I believe that the referee's conclusion that the plaintiff acted reasonably in attempting to relet the premises and thus mitigate damages is warranted on this record.
The defendant urges that the plaintiff is estopped from collecting back rent because he waited too long after the defendant vacated the premise before indicating that the Maxwells would be liable for back rent. The transcript indicates, however, that the defendant and his wife vacated the apartment during the CT Page 1187 last several days in July 1990, and that the plaintiff sent a letter through his lawyer in early September, some six weeks later, insisting that the defendant would be responsible for breaking the lease. Also, there was testimony that the defendant did not leave a forwarding address with the plaintiff, and that Paul Taheri expended a good deal of effort in attempting to locate the defendant at his place of employment immediately after Mr. Maxwell vacated the premises.
The referee's conclusion that certified notice of a default was not necessary seems logical to me. The defendant voluntarily vacated the premises knowing that the plaintiff would seek to recover damages from him, based on his wife's telephone conversation with Paul Taheri. Furthermore, the defendant admitted receiving notice in early September 1990 from plaintiff's lawyer stating that he was being held responsible for breach of the lease.
Of course, there is some contrary evidence in the transcript, but it is axiomatic "that the fact finder determines with finality the credibility of witnesses and the weight to be given their testimony." Plikus v. Plikus, 26 Conn. App. 174, 177,599 A.2d 392 (1991).
The defendant also filed objections to the acceptance of the report, Practice Book 440, on the grounds that the conclusions of fact stated therein were not supported by the subordinate facts found, and that the referee erred in his rulings on evidence.
This court's authority in reviewing an attorney trial referee's recommendations is a limited one. As our Supreme Court held in Dills v. Enfield, 210 Conn. 705, 714, 557 A.2d 517
(1989): (1) the trial court may not "retry the case"; (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book 439, "a material fact has been found without evidence or the (referee) has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear"; and (3) a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716.
If the findings of fact by the referee are accepted, then this court's task, according to Bernard v. Gershman, 18 Conn. App. 652,656, 559 A.2d 1171 (1989), is to determine whether the conclusions of fact and law "are legally and logically correct CT Page 1188 and whether they find support in the facts found by the referee." Practice Book 440. The Appellate Court added that "[w]here evidence is in conflict, its probative force is for the trier of fact to determine." Id.
There is justification in the record for the referee's ultimate conclusion that the plaintiff acted reasonably in attempting to relet the premises after the defendant left the apartment. The lease was clearly breached by defendant and the recommendation that he be responsible for unpaid rent until the premises were relet in June 1991 is accepted, as it follows logically and legally from his findings of fact. No material error in the referee's report has been found, or any other sufficient reason why it is unacceptable. Practice Book 443. In the words of Practice Book 440, the conclusions of fact "were properly reached on the basis of the subordinate facts found."
Judgment is entered in favor of the plaintiff in the amount of $36,528, as recommended by the attorney trial referee. Costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 1st day of February, 1993.
William B. Lewis, Judge